UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
_____

**Carl J. Soranno, Esq.**
**BRACH EICHLER, L.L.C.**
101 Eisenhower Parkway
Roseland, New Jersey  07068-1067
Tel No.: (973) 403-3139
Fax No.: (973) 618-5539
E-mail:  csoranno@bracheichler.com
*Attorneys for Creditors, Anthony Festa, M.D., Anthony Scillia, M.D., Craig Wright, M.D., John Callaghan, M.D., Casey Pierce, M.D. and Academy Orthopaedics, LLC*

| | |
|---|---|
| **IN RE:**<br><br>**NEW JERSEY ORTHOPAEDIC INSTITUTE LLC**<br><br>    Debtor, | Case No.:    25-11370(JKS)<br><br>Chapter 11<br><br>Hon. John K. Sherwood, U.S.B.J. |
| **IN RE:**<br><br>**NORTHLANDS ORTHOPAEDIC INSTITUTE LLC**<br><br>    Debtor, | Case No.:   25-11372(JKS)<br><br>Chapter 11 |
| **NEW JERSEY ORTHOPAEDIC INSTITUTE LLC and NORTHLANDS ORTHOPAEDIC INSTITUTE LLC**<br><br>    Plaintiffs,<br><br>v.<br><br>**ANTHONY FESTA, M.D., ANTHONY SCILLIA, M.D., CRAIG WRIGHT, M.D., JOHN CALLAGHAN, M.D., CASEY PIERCE, M.D. and ACADEMY ORTHOPAEDICS LLC** | Adv. No. 25-01036(JKS) |

**CREDITORS / ADVERSARY PROCEEDING DEFENDANTS, ANTHONY FESTA, ANTHONY SCILLIA, CRAIG WRIGHT, JOHN CALLAGHAN, CASEY PIERCE AND ACADEMY ORTHOPAEDICS LLC's [i] OPPOSITION TO THE DEBTORS' ORDER TO SHOW CAUSE; AND [ii] OBJECTION TO THE DEBTORS' FIRST DAY MOTION AUTHORIZING THE DEBTORS TO PAY PREPETITION WAGES AND RELATED RELIEF**

**PLEASE TAKE NOTICE** that Creditors / Adversary Proceeding Defendants, Creditors, Anthony Festa, M.D., Anthony Scillia, M.D., Craig Wright, M.D., John Callaghan, M.D., Casey Pierce, M.D. (the "Individual Objectors") and Academy Orthopaedics, LLC ("Academy") (collectively, the "Objectors"), by and through their counsel, Brach Eichler LLC, hereby object to the Debtors, New Jersey Orthopaedic Institute, LLC ("NJOI") and Northlands Orthopaedic Institute, LLC's ("NOI") (collectively, the "Debtors") [i] *Order to Show Cause*, to avoid the levies on the Attorney Trust Account of Frier Levitt LLC and the Debtors' bank accounts located at Wells Fargo Bank, N.A. and Valley National Bank *[Adv. No. 25-01036, ECF # 2 and 4]* (the "Order to Show Cause"); and [ii] *Motion for the entry of an Order authorizing the Debtors to pay certain prepetition wages (and associated taxes) and reimbursable employee expenses, (pay and honor employee medical and other benefits, continue employee benefit programs, and other related relief* [*Bk No. 25-11370, ECF # 8]* (the "Wage Motion").

## BACKGROUND FACTS

1. The Debtors' Order to Show Cause and Wage Motion are long in their requests for relief, but short on facts necessary for the Court to grant these requests. The Debtors, captured and under the dominion and control of their sole member, Dr. Vincent McInerney ("McInerney"), assert themselves each to be insolvent, but have failed to file the necessary schedules itemizing their assets, liabilities and financial affairs needed to prove this claim.

- 2 -

2.     Had the Debtors' done so, they presumably would have identified the preferential and fraudulent transfer claims they hold against their sole member, McInerney, of not less than $1,436,000.00, for monies that McInerney has improperly withdrew from the Debtors' businesses since 2022. During his dispute with the Individual Objectors, who were each former owners of the Debtors', left NJOI/NOI in 2021. The Individual Objectors have yet to receive their Court Ordered buyout as a result of McInerney's deliberate scheme to withhold from the Individual Objectors the fair share of the monies due and owing to them. The Debtors books and records will show that the Debtor made excess distributions to McInerney during the pendency of the arbitration between the Individual Objectors, to the detriment of the Debtors and their business, through and including the eve of the Arbitration hearing,.

3.     The Objectors respectfully submit that McInerney has pilfered the Debtors, to the enrichment of himself and other family insiders, who received salaries and other compensation for little or no actual work provided to the Debtors.[1]

4.     The Objectors respectfully further submit that the Debtors' recent history will show that McInerney's wife has recently acquired title to a home in Harding, New Jersey on December 4, 2024 for the sum of $2,225,000.00. **Soranno Decl, Ex. "A".**   Objectors have been unable to find any evidence of any Mortgages or financing used to purchase this property. While it is unknown how much money taken from the Debtors was used to purchase the property, the amount taken from the Debtors to fund this purchase is believed to be substantial.

---

[1] Debtors' Chief Financial Officer testified during the arbitration that McInerney's wife earned $124,000.00 per year to work as his "administrative assistant," a position that did not require her to report to the office. **Soranno Decl., Ex. "E", T.76:17-79:25.**

5.      These actions render McInerney incapable of managing the Debtors' financial affairs post-petition. The Objectors anticipate promptly filing a motion to convert this Bankruptcy to Chapter 7 and/or for the appointment of a Chapter 11 Trustee.  For this reason, strict guardrails must be placed on the Debtors' ability to utilize cash collateral to pay post-petition wages and other post-petition obligations due and owing by the Bankruptcy Estate.  The Debtors' emergent applications/first day motions must be treated with great caution as discussed in greater detail below.

**A.      Debtors' Request for a Wage Payment Order**

6.      At best, any order allowing the Debtors to pay wages should be entered on an interim basis. Furthermore, the Debtors must be compelled to provide an itemized schedule of [i] which employees and contractors they wish to pay; and [ii] how much they wish to pay in salary and other compensation during the interim period; [iii] to the exclusion of any payments to the Debtors' insiders.  This schedule should itemize all proposed compensation to be paid to each of the Debtors' employees and contractors from NOI/NJOI, and their contribution to the Debtors' operations in order to allow parties in interest and opportunity to object to specific line items of compensation.

7.      Similarly, the Debtors' request for allowance of undescribed "other compensation" and "certain allowances," including the $1,500 per month car allowance for McInerney should be denied. Likewise, the Debtors attempt to obtain a payment allowance for an unidentified "independent contractor, paid outside of the payroll of employees," should be rejected without more information and disclosures on whom this independent contractor is, what services they actually provide to the Debtors, and whether that independent contractor is an insider of the Debtors.  Objectors note that the wages paid to the "independent contractor" appear to match the payments made to McInerney's daughter for "social media" services --- services that appear duplicative of those provided by another company according to the testimony provided

by Debtors' Chief Financial Officer during the pre-petition Arbitration dispute. **Soranno Decl, Ex. "E",** *T.240:7-241:25*.

8.      Lastly, the Debtors should be required to disclose all unencumbered cash on hand in their possession, in order to determine whether any other emergent relief is necessary (re, the Order to Show Cause) to meet their post-petition wage payment obligations. The Debtors must be compelled to promptly file all required schedules (already the subject of an order to show cause for dismissal of this bankruptcy – *see ECF # 5*) to obtain any form of relief form this Court.

**B.      The Order to Show Cause**

9.      Additionally, Objectors respectfully submit that the Debtors emergent request to vacate the pre-petition bank levies on their Wells Fargo / Valley National Bank accounts and the Frier Levitt attorney trust account should be denied. First, the $1,750,000.00 maintained in the Frier Levitt attorney trust account, pursuant to the pre-petition Order of the Superior Court of New Jersey entered on May 5, 2022 in the matter of Festa, et. al. v. McInerney, et. al., Docket No.: PAS-C-5-22 (the "2022 State Court Order"). **Soranno Decl., Ex. "A".** Objectors contend that the Debtors do not have any legal or beneficial interest in these monies pursuant to Section 541(b) of the Bankruptcy Code, as discussed below. The Individual Objectors interest in the Frier Levitt escrow monies goes back to 2022, well preceding the ninety (90) day preference period applicable to non-insider preferences under Section 547 of the Bankruptcy Code. These funds are not subject to avoidance as a matter of law and as a matter of fact. Importantly, the Adversary Complaint and Order to Show Cause make no reference to the 2022 State Court Order or provide other proof of the ownership of the monies in the Frier Levitt attorney trust account.

10.     Second, the Debtor has not established just cause to set aside the pre-petition levies on the Wells Fargo / Valley National Bank accounts at this time, inasmuch as the Debtors have neither proved

- 5 -

insolvency within the meaning of Section 547(b)(3) of the Bankruptcy Code. Indeed, the Debtors' careless application does not identify how much money was levied in each bank account, which of the two Debtors (NOI or NJOI) were the owner of said funds, how much money not subject to levy may remain in any other bank account owned by and/or for the benefit of the Debtor, or how much money may have been subsequently deposited into the Wells Fargo / Valley National Bank accounts following the levy. Indeed, the Debtor is asking for final relief, without having so much as filed the required Schedules of Assets and Liabilities or Statements of Financial Affairs incumbent upon all Chapter 11 debtors.

11. Additionally, the Objectors note that the Debtors' have not sought to differentiate or itemize how much money was levied, belonging to each Debtor. This is a critical omission, inasmuch as NOI has a bare minimum of listed creditors, other than the Objectors, at least one of whom (Aetna) may hold a contingent obligation, subject to pre-petition offsets. *[Bk 25-11372, ECF # 1, p. 5]*. The Debtors' have thus not made the case that the levy against NOI has allowed the Objectors to receive more than they would otherwise receive in a Chapter 7.

## **OBJECTION**

12. For these reasons, the Objectors respectfully object to the entry of the Wage Payment Order submitted by the Court, as the Bankruptcy Court lacks sufficient disclosures on the wages that are proposed to be paid to the employees /contractors of each debtor, the amount of the proposed payment and the insider status of any employees and/or independent contractors.

13. The Objectors likewise object to the entry of the Order to Show Cause with respect to the Frier Levitt attorney trust account, and with Debtors' bank accounts. The pre-petition levies were not violative of the automatic stay because they levies indisputably were placed prior to the bankruptcy.

Moreover, pre-petition "transfers" are not "property of the estate" within the meaning of Section 541(a)(3), until the transfers are recovered under Section 550 of the Bankruptcy Code.

14. Moreover, as discussed in greater detail below, the Debtors' are not entitled to any relief regarding the Frier Levitt account, because the monies residing in that account are not Property of the Estate. Consequently, the Debtors cannot establish probability of success on the merits regarding those funds. Nor can they establish imminent harm if their request for relief is not granted, vis-à-vis the monies escrowed within the Frier Levitt attorney trust account.

15. Lastly, the Debtors' request for relief regarding the monies actually levied in their bank accounts (i.e., Wells Fargo and Valley National Bank) is, at best, premature, and Debtors have not presented sufficient disclosures to this Court to justify relief on an emergent basis. To the extent that the levied funds contained within the Wells Fargo and Valley National Bank accounts are needed to fund the Debtors' operations, the Debtors must provide the Court with a detailed budget so interim relief can be entered in an amount not greater than needed to fund the Debtors' operations and pay wages for non-insider employees.

## BASIS FOR OBJECTION

**I.     The Debtors' Have Not Provided Sufficient Disclosures to Support the Entry of the Wage Payment Order**

Objectors concede that a Motion to pay pre-petition employee wages is a ordinarily a routine first day motion, and Objectors do not dispute that an interim order directing certain ordinary course payments of employee wages and income taxes associated with those wages may be appropriate in this instance. However, the Debtors' disclosures to the Bankruptcy Court have been woefully short of what should be required in this instance, given the alleged pre-petition conduct of their sole principal, McInerney. Here,

the Debtors indicate they have in their employ "approximately 20 employees, all full-time employees." *Bk 25-11370 ECF # 8, p. 3.* Given the limited number of employees at issue, it should not be a burden to identify the names of the employees and the responsible party for issuing their paychecks and paying tax obligations (i.e., NOI or NJOI). Likewise, the Debtors' should not have any issues identifying insider employees and independent contractors, and identifying all payments made to said insiders within the last year preceding the bankruptcy. Indeed, this information is required to be completed by all non-individuals in the Statement of Financial Affairs (Official Form 207), which the Debtors have yet to complete. The Debtors' should likewise have no issue disclosing the accounts used to fund their payroll through Ceridian Small Business and which of the Debtors' funds is ordinarily utilized to pay said employees, or the identity of the "independent contractor" who is paid outside of ordinary payroll.

Objectors respectfully submit that the Debtors' wage payment obligations must be highly scrutinized, to the extent that they include any payments to insiders outside the ordinary course of business, including any raises, bonuses or other compensation the Debtors' paid to insiders since the commencement of litigation with the Objectors, with any additional payments made outside the ordinary course of the Debtors' business being denied.

**II.     The Order to Show Cause Should Be Denied In Its Entirety With Respect to the Monies Held in the Frier Levitt Attorney Trust Account**

Fed. R. Bankr. P. §7065 makes Fed. R. Civ. P. § 65, governing injunctions and restraining orders, applicable in any Adversary Proceeding pending before the Bankruptcy Court. In deciding whether to grant temporary restraints and/or preliminary injunctive relief, the Federal Courts in the 3rd Circuit will look to four factors: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of relief; (3) whether granting preliminary relief will result in even greater harm to the non-moving party; and (4) whether granting the preliminary

relief will be in the public interest. See Council of Alternative Political Parties v. Hooks, 121 F.3d 876 (3rd Cir. 1997) (citing American Civil Liberties Union of New Jersey v. Black Horse Pike Regional Board of Educ., 84 F.3d 1471, 1477 n.2 (3d Cir. 1996)(*en banc*)). The grant or denial of a request for injunctive relief rests within the "sound discretion of the district judge, who must balance all of these factors in making a decision." FM 103.1 Inc. v. Universal Broad. of N.Y., Inc., 929 F. Supp. 187, 193 (D.N.J. 1996).

In this Circuit, the courts place particular emphasis on the probability of irreparable harm and the likelihood of success on the merits. See Jews for Jesus v. Brodsky, 993 F. Supp. 282, 293 (D.N.J. 1998), aff'd, 159 F.3d 1351 (3rd Cir. 1998) (citing cases). A federal court should issue injunctive relief when it is necessary to prevent immediate and irreparable damage. See F.C.R.P. 65(a); Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86 (3rd Cir. 1992); Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 800 (3rd Cir. 1989); ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3rd Cir. 1987). In this Circuit, "to show irreparable harm, a plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial." Acierno v. New Castle County, 40 F.3d 645, 653 (3rd Cir. 1994). "A clear showing of immediate irreparable injury," or a "presently existing actual threat" will warrant injunctive relief. See Continental Group Inc. v. Amoco Chem. Corp., 614 F.2d 351, 359 (3rd Cir. 1980); Campbell Soup, 977 F.2d at 91.

Here, it is plain that the Debtors cannot show irreparable harm or reasonable probability of success on the merits with respect to the $1,750,000.00 residing in the Frier Levitt attorney trust account. It is undisputed that the Debtors do not have legal title to the Frier Levitt attorney trust account. It is equally undisputed that the Debtors lacked control over the $1,750,000.00 deposited with the Frier Levitt attorney trust account since 2022. The levy on the Frier Levitt attorney trust account did not alter any facts related to these funds that had not existed throughout the past three years. The Debtors' bankruptcy filing does

- 9 -

not create an emergency over these funds that needs to be addressed on 2 days' notice. Similarly, the Debtors have not established any imminent harm vis-à-vis these funds.

Nor have the Debtors established a reasonable probability of success on the merits regarding the Frier Levitt monies, which the Debtors improperly style as "Debtors Bank Accounts" in their Order to Show Cause. As a matter of law, the Debtor lacks ownership over these monies, and they are not "Property of the Estate" within the meaning of Section 541 of the Bankruptcy Code.

Because property interests of the debtor are not defined by the Bankruptcy Code, the court must look to state law. Butner v. United States, 440 U.S. 48, 99 S. Ct. 914, 918, 59 L.Ed. 2d 136 (179). "Like most states, New Jersey follows the general rule that the deposit of property in escrow 'creates in the grantee such an equitable interest in property that upon full performance of the conditions according to the escrow agreement, title will vest at once in him..'" In re Arrow Mill Development Corp., 185 B.R. 190 (citing 28 Am. Jur. 2d. 10 (1964); 30A C.J.S. Escrows § 9 (1965); Zaremba v. Konopka, 94 N.J. Super. 300, 228 A.2d. 91 (Ch. Div. 1967) (rule followed in context of real estate transactions); Craig v. Craig, 25 N.J. Super. 226, 95 A.2d. 767 (Ch. Div. 1953) (same); Gallicchio v. Jarzla, 18 N.J. Super. 206, 86 A.2d. 820 (Ch. Div. 1952) (same).

Here, under the 2022 Order, the Debtors placed "$1,750,000 into escrow during the pendency of the litigation" with Objectors with "the attorney trust account of Frier Levitt LLC by no later than the close of business on Monday May 9, 2022…to secure the [Objectors] claim to an entitlement to end of year 2021 distributions." On February 19, 2024, the Arbitrator confirmed the arbitration award in favor of Objectors in the amount of $7,605,000.00, including "$5,205,000.00 to be paid immediately," for end of year 2021 distributions of $1,250,000.00, buyout of membership interests of $645,000.00, payments under deferred

compensation arrangements of $2,955,000.00 and BAIT Tax Rebate of $885,000.00.[2] **Soranno Decl, Ex. "C".** Arbitration Award was confirmed by the Superior Court of New Jersey on September 23, 2024. **Soranno Decl., Ex. "D".**

Upon the Arbitrators ruling, the monies within the Frier Levitt attorney trust account ceased being the property of the Debtors' estates under New Jersey law, and became the property of the Objectors. Moreover, the property ceased being Property of the Estate "when the deposits were made" to the Frier Levitt Attorney Trust Account in 2022. See Matter of Napoleon, 1990 WL 132220, * 4 (D.N.J. Sept. 11, 1990). (reversing bankruptcy order determining that monies in escrow account could be avoided under Section 547).

Accordingly, the Debtor is not entitled to a return of these monies on the merits, and the Debtors' attempt to release the pre-petition levy made for the sole purpose of securing turnover should be denied on the merits.

**III.    The Order to Show Cause Is, At Best, Premature With Respect To the Wells Fargo and Valley National Bank Levies**

Lastly, Objectors respectfully submit that the relief requested by way of the Debtors' Order to Show Cause, seeking the release of levied funds on deposit with Wells Fargo and Valley National Bank is premature. Pursuant to Section 547(g) of the Bankruptcy Code, the trustee or debtor-in-possession bears the burden of voidability of a transfer by preponderance of the evidence. Herein, while the Debtors assert that they were made insolvent as a result of the Judgment entered against them by the Arbitrator and subsequent levy, the Debtors' failure to file the required schedules of assets, liabilities, financial affairs

---

[2] The Arbitrator ruled that the Debtors had a "fiduciary duty to pay" the Individual Objectors the $885,000.00 BAIT rebait and the Individual Objectors' BAIT rebate claim is a non-dischargeable obligation under 11 U.S.C. 523(a)(4). (**Soranno Decl, Ex. "C", p.6**).  Debtors' continued failure to pay these monies from available funds following the Arbitration Award was a breach of the Debtors' fiduciary obligation ,and indeed of the fiduciary obligation of the Debtors' controlling principal.

- 11 -

(etc.) makes this far from clear, as does the extensive history of transfers from the Debtors for the benefit of McInerney and his relatives, which is a large asset of the Debtors' bankruptcy estate, in addition to its other assets (i.e. insurance and other receivables due and owing as of the Petition Date).

Consequently, the Debtors have not established, by preponderance of the evidence, that they are entitled to avoid the pre-petition levies on the Wells Fargo / Valley National Bank accounts, particularly given the lack of actual claims listed by the Debtors' as to the bankruptcy estate of NOI.

Objectors respectfully submit that additional disclosures are necessary by the Debtors, including the [i] amount of monies in **all** bank accounts held by and/or for each Debtor's benefit as of the Petition date; [ii] the account owner(s) of said account; [iii] the identity of all receivables due and owing as of the Petition Date; and [iv] an itemization of all insider transfers made since, at a minimum, January, 2022, when the Objectors began litigation against the Debtor/McInerney.  In short, the Debtors' should be required to complete all financial disclosures required of any Chapter 11 Debtors prior to adjudicating any request for relief related to the Valley National Bank / Wells Fargo levies.

## IV. OBJECTORS RESERVE ALL RIGHTS TO SEEK DISMISSAL AND/OR THE APPOINTMENT OF A TRUSTEE

Objectors contend that the post-petition Debtors, while they remain in the control of McInerney, cannot be free from the taint of prior management which has enriched McInerney and other insiders, to the detriment of the Debtors.  Accordingly, Objectors reserve all rights to seek dismissal of the Bankruptcy or the appointment of a Chapter 11 Trustee, in the best interest of the creditor body, pursuant to 11 U.S.C. § 1104(a).

## CONCLUSION

**WHEREFORE**, for all of the foregoing reasons, Objectors respectfully request that the Bankruptcy Court deny the Debtors' Order To Show Cause without prejudice, with respect to the Wells Fargo / Valley National Bank levies, and with prejudice, with respect to the Frier Levitt monies, which are not property of the Debtors' bankruptcy estates. The Objectors further respectfully submit that the Debtors' Wage Motion be denied as presented. To the extent the Bankruptcy Court is inclined to enter any interim orders, the Debtors should be directed to promptly complete their required disclosures and submit an itemized ledger of all employees / independent contractors whom they propose to be paid in any post-petition Wage Payment Order prior to the entry of an orders to permit creditors and interested parties to review the schedules with the ability to assert any objections over payments, and a budget for any other ordinary course non-insider operating expenditures that may be needed post-petition. , subject to the objection of creditors and other interested parties. The Objectors respectfully submit that any Wage Order be entered in an interim basis only, subject to final hearing at a later date, after all required disclosures have been made.

Dated:       February 12, 2025
             Roseland, New Jersey

                                        BRACH EICHLER L.L.C.
                                        Attorneys for Objectors


                                        BY:   /s/ Carl J. Soranno, Esq.
                                              Carl J. Soranno, Esq.