

Stephen B. Ravin
Phone: (973) 286-6714
Stephen.Ravin@saul.com
www.saul.com

March 10, 2025

**VIA COURT'S CM/ECF SYSTEM**
Honorable John K. Sherwood
United States Bankruptcy Judge
United States Bankruptcy Court District
of New Jersey
50 Walnut Street, 3rd Floor
Newark, N.J. 07102
Courtroom 3D

> RE: Hearing in <u>New Jersey Orthopaedic Institute LLC et al. v. Festa, et al.</u>, Adv. Pro. No. 25-01036 (JKS)

New Jersey Orthopaedic Institute LLC and Northlands Orthopaedic Institute LLC (collectively, the "<u>Debtors</u>"), by and through their proposed attorneys, Saul Ewing LLP, hereby submit this letter regarding the hearing scheduled for March 11, 2025 in the above-captioned case and associated adversary proceeding.

Per the instruction of the Court, the Debtors will file a separate agenda regarding the matters scheduled for March 11, 2025. This Letter provides the Debtors' substantive position on all contested issues potentially going forward.

**A. Motion to Maintain Insurance.**

The Debtors' largest creditors – also the Defendants in the adversary proceeding – filed a limited objection to the Debtors' motion to pay insurance. Via the motion, the Debtors seek authority to pay the following insurance charges:

- Malpractice insurance to MAG Mutual (Dr. Shindle's coverage): next payment 4/16/25 - $7,719.00
- Malpractice insurance to MAG Mutual (NJOI's other coverage): next payment 4/1/25 - $21,518.39
- Workers' Comp insurance to CNA: $2,619.28 due on 4/19/2025.

The Debtors have sufficient postpetition receipts to pay these amounts. It is not clear why Defendants even have standing to object, given that they have no relevant interest in the funds that will pay the insurance.

To address issues raised in the limited objection, the Defendants had the above information before they filed their objection, but appear confused why annual necessary insurance should be paid. These payments are incremental payments related to an annual policy period. In this context, it is not clear that

55238203.2

"prepetition" and "postpetition" debts have the same impact as on other debts: while clearly due postpetition, the payments are for a year of insurance which includes prepetition dates. In the interest of ensuring uninterrupted coverage, the Debtors filed the motion.

The objection correctly notes that Dr. Shindle has left the practice; the Debtors have already submitted a cancellation of this coverage to minimize costs. The Debtors are assessing whether they must pay some amount attributed to his coverage listed above in order to maintain coverage for the portion of the coverage period when he was with the Debtors. The Debtors submit that they may be entitled to a reduction of premium or even a return of premium. For this reason, the motion requests only authority, and not direction, to pay.

The objection suggests that the Defendants – parties with fundamentally no lien interest in the funds that will pay the appropriate and necessary insurance costs – are entitled to invoices for insurance. There is no such requirement, and the Defendants have the relevant information – the nature of coverage, the amounts to be paid and the due dates – that is relevant to any dispute over budgeting.

The Debtors submit that the limited objection does not actually assert a cognizable objection to the motion. The limited objection must be overruled and the motion granted so the Debtors have clear authority to maintain legally-required insurance.

### B. Budgeting and Order to Show Cause

After the prior interim hearing on February 26, 2025, the Debtors continued to receive ordinary-course receipts. The Defendants do not have any lien interest in these postpetition receipts, nor does any other creditor.

Attached to this Letter is a 13-Week Cash Flow Statement containing the Debtors' current projections for receipts and expenses. The projections for receipts are conservative – approximately $164,000 per two-week payroll period for the first few budgeted weeks. In the two weeks between the Petition Date and the prior Interim Hearing, receipts were approximately $172,000.

These projections show that the Debtors are able to cover their ordinary course expenses, and compensate Dr. McInerney at the 75% level previously discussed, and cover the extra professional expenses of the case for a time, while maintaining an overall increasing cash balance. In fact, while these expenses are budgeted in the week they are incurred (for professional expenses) or come due (for other expenses), the professional expenses will likely be paid later once the professionals are retained and their fees approved. This timing effect means that the current need for cash in the next several weeks is lessened.

As of the date of this Letter, the Debtors have $174,470.86 on hand from postpetition receipts, almost entirely from receipts paid since the prior interim hearing. This is consistent with, and slightly more favorable than, the projections.

During the next two weeks, the Debtors will incur approximately $100,000 of expenses for payroll and employee benefits. The Debtors are able to pay the ordinary expenses of their business without further disbursements from escrow, and request that another interim hearing in the adversary proceeding be scheduled for a date approximately two weeks out, subject to the availability of the Court.

**C. Witnesses and Exhibits**

If a hearing on any of the pending motions or requests is required, the Debtors may submit the attached 13 Week Cash Flow Statement into evidence.

Kinga Skalska-Dybas, the CFO of the Debtors, will be present at the hearing, if one is required, to testify to the Debtors' background, current operations, cash position, expenses, and all other facts alleged in the pending motions or this letter.

**SAUL EWING LLP**

By: */s/ Stephen B. Ravin*
Stephen B. Ravin, Esquire
Turner N. Falk, Esquire
One Riverfront Plaza
1037 Raymond Blvd., Suite 1520
Newark, NJ 07102-5426
Telephone: (973) 286-6714
E-mail: stephen.ravin@saul.com
turner.falk@saul.com

*Proposed Counsel for Debtors and Debtors in Possession*