| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** <br> *Caption in Compliance with D.N.J. LBR 9004-1(b)* <br> **SAUL EWING LLP** <br> Stephen B. Ravin, Esquire <br> Turner N. Falk, Esquire <br> One Riverfront Plaza <br> 1037 Raymond Blvd., Suite 1520 <br> Newark, NJ 07102-5426 <br> Telephone: (973) 286-6714 <br> E-mail:  stephen.ravin@saul.com <br>             turner.falk@saul.com <br><br> *Counsel to the Debtors and Debtors in Possession* | |
| In re: <br><br> NEW JERSEY ORTHOPAEDIC INSTITUTE LLC, *et al.*, <br><br> Debtors.[2] | Chapter 11 <br><br> Case No. 25-11370 (JKS) <br><br> (Jointly Administered) |
| NEW JERSEY ORTHOPAEDIC INSTITUTE LLC and NORTHLANDS ORTHOPAEDIC INSTITUTE LLC, <br><br> Plaintiffs, <br><br> v. <br><br> ANTHONY FESTA, M.D., ANTHONY SCILLIA, M.D., CRAIG WRIGHT, M.D., JOHN CALLAGHAN, M.D., CASEY PIERCE, M.D., AND ACADEMY ORTHOPAEDICS LLC, <br><br> Defendants. | Adv. Pro. No. 25-01036 (JKS) |

## MOTION FOR ENTRY OF AN ORDER PURSUANT TO RULE 9019(a) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE <u>APPROVING THE SETTLEMENT AGREEMENT</u>

---

[2] The last four digits of Debtor New Jersey Orthopaedic Institute LLC's tax identification number are 3560; the last four digits of Debtor Northlands Orthopaedic Institute LLC's tax identification number are 9828. The location of both Debtors' principal place of business and the Debtors' service address in these Chapter 11 Cases is 504 Valley Road, Suite 200, Wayne NJ 07470.

55489409.1

New Jersey Orthopaedic Institute LLC and Northlands Orthopaedic Institute LLC (collectively, the "Debtors" and the "Plaintiffs"), by and through their undersigned counsel, hereby move this Court for an order approving the settlement agreement resolving the above-captioned adversary proceeding and the claim allowance dispute between the Debtors, and Anthony Festa, M.D., Anthony Scillia, M.D., Craig Wright, M.D., John Callaghan, M.D., Casey Pierce, M.D., and Academy Orthopaedics LLC (collectively, the "Judgment Creditors" and the "Defendants") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), respectfully represent and set forth as follows:

## JURISDICTION

1.  This Court has jurisdiction over this Motion under 28 U.S.C. §1334, which is a core proceeding within the meaning of 28 U.S.C. §157(b)(2). Venue of this proceeding is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.  The statutory predicates for relief requested herein are sections 105 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") and Fed. R. Bankr. P. 9019.

## BACKGROUND

3.  On February 10, 2025 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey (the "Court").

4.  No request has been made for the appointment of a trustee or examiner, and no official committee of unsecured creditors has been established in this case. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

55489409.1

**A.    The Debtors' Businesses**

5.    New Jersey Orthopaedic Institute LLC, formerly McInerney Orthopaedic and Sports Medicine, LLC, was established in 2009.

6.    Northlands Orthopaedic Institute LLC was created in October 2019, strictly for the separation of claims processed in and out of network.  All out-of-network claims are submitted through Northlands Orthopaedic Institute; all in-network claims with insurance carriers are submitted through New Jersey Orthopaedic Institute.

7.    Collectively, the Debtors form an orthopaedic and sports medicine practice that provides medical and surgical services to patients. The practice also offers services to numerous local schools, as well as medical coverage during high school football games. As of the Petition Date, the practice had four doctors and one mid-level provider. *See* the *Declaration of Kinga-Skalska-Dybas* attached hereto.

8.    Further information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of the Chapter 11 Cases is set forth in the *Declaration of Kinga-Skalska-Dybas in Support of First Day Relief* [D.I. 7] (the "First Day Declaration").

**B.    The Adversary Proceeding**

9.    On the Petition Date, by way of a verified complaint and application for an order to show cause, the Debtors commenced the above-captioned adversary proceeding, seeking to set aside the Levy (as defined in the First Day Declaration) on the Debtors' bank accounts as a preferential transfer under 11 U.S.C. §§ 547 and 550 and a violation of the automatic stay in order to unfreeze the necessary funds for immediate operations under 11 U.S.C. § 362 (the "Adversary Proceeding").  [Adv. Pro. D.I. 1].

3

10. On March 13, 2025, the Judgment Creditors filed their *Answer to Adversary Complaint, Affirmative Defenses, Counterclaim and Third Party Complaint* (the "Answer") [Adv. Pro. D.I. 17]. Throughout the course of the Chapter 11 Cases and the Adversary Proceeding, the Plaintiffs and Defendants have made appearances in an effort to enforce their respective rights.

11. During the course of the Chapter 11 Cases and Adversary Proceeding, the Debtors and Judgment Creditors agreed to confer and negotiate the issues in the Adversary Proceeding as well as potential plan confirmation disputes in the Chapter 11 Cases.

12. The Debtors and Judgment Creditors engaged in Court-facilitated mediation on April 23, 2025. During that mediation, they reached a settlement of all issues in the Adversary Proceeding and bankruptcy cases. To avoid the incurrence of continuing and substantial expenses and the significant uncertainties of litigation, the Debtors and Judgment Creditors have decided to compromise, settle, forever resolve, and finally dispose of all outstanding disputes between them and obtain the Judgment Creditors' support for the confirmation of a plan of reorganization consistent with this agreement (a "Plan").

13. The Debtors seek approval of the settlement agreement memorializing the agreement between the Debtors and Judgment Creditors (the "Settlement Agreement"), a copy of which is attached as **Exhibit B**.

## THE SETTLEMENT[3]

14. The Judgement Creditors have allowed secured claims in the amount of $2,434,565.41 secured by the FL Escrow and Saul Escrow, and general unsecured claims of $5,373,822.31.

---

[3] Capitalized defined terms herein have the same meaning as in the Settlement Agreement. The terms of the settlement agreement are summarized here merely for convenience. In the event of any conflict between the terms described herein and the settlement agreement, the settlement agreement controls.

15. The Judgment Creditors will accept and support any Plan consistent with the Settlement Agreement.

16. On the Effective Date of the Plan, the Adversary Proceeding will be dismissed with prejudice and the Debtors, Insiders and Judgment Creditors will mutually release each other from all claims except those imposed by the Plan and/or Settlement Agreement.

17. On the Effective Date of this Plan, the FL Escrow with accrued interest thereon will be released to the Judgment Creditors and the Debtors will transfer to the Judgment Creditors $300,000 from the Saul Escrow on account of their secured claims.

18. The Debtors will also pay the Judgment Creditors an additional $300,000 over 30 months on account of their unsecured claims, which shall be memorialized by a promissory note.

19. The Insiders will make the following New Value Contribution:

    a. The Insiders will cause the funding shortfall in the Cash Balance Plan administered by Merrill Lynch to be paid, shall direct the Cash Balance Plan to disburse to the Judgment Creditors their portion of the Cash Balance Plan (individual retirement assets belonging to Judgment Creditors and are not property of the Debtors' Estates) to accounts of the Judgment Creditors' choosing and shall also transfer cash or assets worth $300,000.00 from Dr. McInerney's portion of the Cash Balance Plan to the Judgment Creditors, as the Judgment Creditors direct. The payment from Dr. McInerney will be in addition to the sums transferred to the Judgment Creditors by the Debtors described above.

    b. The Insiders will also transfer their direct and/or indirect membership interests in the entities that own (i) the real estate located at 504 Valley Rd, Suite 22, Wayne, NJ 07470; and (ii) the real estate located at 622 Eagle Rock Avenue, West Orange, NJ 07052.

55489409.1

      c.      Dr. McInerney will personally guarantee the Debtors' obligations under the aforementioned promissory note.

**RELIEF REQUESTED**

20.    The Debtors request that this Court enter an order in the form attached hereto as **Exhibit A** (the "Proposed Order") pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") approving the Settlement Agreement between the Debtors and the Judgment Creditors, attached as **Exhibit B**.

21.    Pursuant to Bankruptcy Rule 9019(a), "a bankruptcy court has the discretionary authority to approve a compromise." *See* Fed R. Bankr. P. 9019(a). "This discretion should be exercised in light of the general public policy favoring settlements." *In re Hibbard Brown & Co.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998). In an effort to minimize litigation and expedite the administration of bankruptcy estates, settlements are favored in bankruptcy. *In re Nutraquest, Inc.*, 434 F.3d 639, 644 (3d Cir. 2006).

22.    Additionally, settlements must be deemed to be "fair and equitable" prior to approval. *See In re Nutraquest, Inc.*, 434 F.3d 639, 644 (3d Cir. 2006); *see also Key3Media Group, Inc. v. Pulver.com, Inc.*, 336 B.R. 87, 93 (Bankr. D. Del. 2005) (In essence, a court will approve a settlement when it is fair and equitable and in the best interests of the estate.); *see also In re Lehman Bros. Holdings, Inc.*, 435 B.R. 122, 133-134 (S.D.N.Y. 2010); *see also In re Drexel Burnham Lambert Group*, 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991) (Bankruptcy courts must make an informed, independent judgment as to whether a settlement is "fair and equitable" and "in the best interests of the estate.").

23.    The Third Circuit has articulated several factors for approval of a settlement agreement. These factors include: (1) the probability of success in litigation; (2) the likely

55489409.1

difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors. *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996).

24. It is respectfully submitted that the Settlement Agreement meets the criteria set forth by the Third Circuit for approval.

25. The Debtors submit that litigating the claims set forth in the Chapter 11 Cases and the Adversary Proceeding would be costly. Further, the likelihood of success is uncertain. If the Debtors ultimately proved unsuccessful in the litigation, it is highly unlikely that the Debtors would be able to successfully reorganize and/or exit their Chapter 11 Cases. Based on the Debtors' current debt load, any amount and terms over and beyond those set forth in the Settlement Agreement would severely strain the Debtors' ability to pay creditors and the viability of the go-forward business.

26. In the event the Debtors and Judgment Creditors' issues are not resolved, litigation in the Adversary Proceeding and strain placed on the Chapter 11 Cases will cause a significant drain on the Debtors' financial and managerial resources. A trial would involve investigating facts stemming from a complex "business divorce" and substantial costs upon the Debtors' estates. Moreover, the Debtors appreciate the uncertainty inherently involved with trials, and simply can neither risk losing or placing further strain on the Chapter 11 Cases that would prevent the Debtors from achieving a successful reorganization and exit from their Chapter 11 cases. The Debtors submit that the Settlement Agreement is in the best interest of all parties

27. Lastly, the settlement is the best possible scenario for all parties involved. The settlement addresses and resolves the claims of the Debtors' largest and most litigious creditors. In the event the Settlement Agreement is approved, the Debtors will have a substantially higher

7

likelihood of confirming a chapter 11 plan. Accordingly, approval of the Settlement Agreement provides significant immediate benefit to the Debtors' estates.

28. The Debtors believe the Settlement Agreement is fair, equitable, and reasonable in light of the circumstances.

29. Therefore, the Debtors respectfully request that this Court enter an order in the form of the Proposed Order approving the Settlement Agreement pursuant to Bankruptcy Rule 9019.

WHEREFORE, the Debtors respectfully request that the Court enter an Order, in substantial conformity with the Proposed Order, approving the Settlement Agreement and for such other and further relief as the Court deems proper.

Dated: June 23, 2025    **SAUL EWING LLP**

By:*/s/ Stephen B. Ravin*
Stephen B. Ravin, Esquire
Turner N. Falk, Esquire
One Riverfront Plaza
1037 Raymond Blvd., Suite 1520
Newark, NJ 07102-5426
Telephone: (973) 286-6714
E-mail:stephen.ravin@saul.com
         turner.falk@saul.com

*Counsel for Debtors and Debtors in Possession*